UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-5367 (JFB) (ARL)
_____

CHRISTOPHER RAFANO,

Plaintiff,

VERSUS

PATCHOGUE-MEDFORD SCHOOL DISTRICT, PATCHOGUE-MEDFORD SCHOOL BOARD AND MICHAEL MOSTOW, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT,

Defendants.

_____

**MEMORANDUM AND ORDER**
March 20, 2009
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff, Christopher Rafano ("plaintiff" or "Rafano") brings the present civil rights action against the Patchogue-Medford School District (the "District"), the Patchogue-Medford School Board (the "School Board") and Michael Mostow ("Mostow"), individually and in his official capacity as Superintendent, (collectively, "defendants"), alleging that (1) plaintiff's academic transcripts issued by defendants reflected incorrect grades, (2) defendants interfered with plaintiff's ability to take the SAT Examination, and (3) these actions, in conjunction with defendants' refusal to release plaintiff's medical records, resulted in plaintiff's rejection from all colleges of his choice. Plaintiff brings this action under 42 U.S.C. § 1983 ("Section 1983"), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1490, and state law.

Defendants move for summary judgment on all claims. For the reasons set forth below, defendants' motion is granted on all federal claims, and the Court declines to exercise supplemental jurisdiction over the state claims.

## I. Background

### A. Facts

The Court has taken the facts described below from the parties' affidavits, exhibits and defendants' Local Rule 56.1 Statement of Facts ("Defs' 56.1").[1] In ruling on a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

Plaintiff attended the Patchogue-Medford School District for part of the school years between 2001 and 2004. (Defs' 56.1 ¶ 1.) Plaintiff suffers from ADHD and bipolar disorder. (Defendants' Affirmation in Support, Ex. X.) On November 12, 2002, plaintiff's mother requested that plaintiff be evaluated by the District's Committee on Special Education ("CSE"). (Defs' 56.1 ¶ 2.) A CSE meeting was held on January 10, 2003, and resulted in plaintiff's classification as "Other Health Impairment." (*Id.* ¶ 3.) Between February 2003 and March 2003, plaintiff was suspended from school on several occasions for "cutting classes, walking out of classes without permission, and displaying insubordinate behavior, including use of profanities to teachers and other school staff." (*Id.* ¶¶ 4-5.) A meeting was held on April 2, 2003, at which the CSE determined that plaintiff "would benefit from a smaller structured learning environment." (*Id.* ¶ 6.) The CSE recommended a BOCES screening, to which plaintiff's mother consented. (*Id.* ¶ 6.) At a meeting held on June 11, 2003, the CSE and plaintiff's parents approved plaintiff's placement at the Eastern Suffolk BOCES. (*Id.* ¶ 7.)

Plaintiff attended Eastern Suffolk BOCES from May 2003 through November 2003. (*Id.* ¶ 8.) In August of 2003, plaintiff's mother requested a CSE meeting because she no longer approved of plaintiff's placement. (*Id.* ¶ 9.) Such meeting was held on September 10, 2003, and CSE and plaintiff's mother agreed that plaintiff would continue to attend BOCES. (*Id.* ¶ 9.)

In December of 2003, at the request of plaintiff's mother, the CSE agreed to place plaintiff back into the Patchogue-Medford High School. (*Id.* ¶ 10.) At a meeting on January 23, 2004, however, the CSE determined that plaintiff's needs were not being met at the high school and plaintiff

---

[1] The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504-05 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-*5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

"continued to 'openly defy authority figures and use inappropriate language.'" (*Id.* ¶ 11.) Plaintiff's mother agreed to another BOCES screening, with home tutoring as the interim placement until an appropriate placement could be arranged. (*Id.* ¶11.) On January 26, 2004, plaintiff's mother wrote to the District, informing it that she disagreed with the CSE's determination and she had decided to send plaintiff to a private school, the Sappo School. (*Id.* ¶ 12.) In or about February of 2004, the District agreed to pay for plaintiff to attend the Sappo School. (*Id.* ¶ 13.) Plaintiff finished high school at the Sappo School, receiving a Regents diploma in August of 2004. (*Id.* ¶ 14.)

1. Plaintiff's Transcript

On October 22, 2004, plaintiff's mother requested a copy of plaintiff's transcript from the defendant school district. (*Id.* ¶ 15.) That same day, the school district provided plaintiff's mother a transcript containing plaintiff's grades from the Patchogue-Medford School District. (*Id.* ¶ 16.) Plaintiff's mother then requested a new transcript, including the grades plaintiff received at the Sappo School. (*Id.* ¶ 17.) The Sappo School provided the District with plaintiff's grades received from the Sappo School on October 26, 2004. (*Id.* ¶ 17.) On December 10, 2004, the District sent plaintiff's mother a copy of plaintiff's transcript, incorporating the grades provided by the Sappo School. (*Id.* ¶ 19.)

Plaintiff claims that plaintiff's grades from the Sappo School are not accurately reflected in the transcript the District sent . (*Id.* ¶ 20; *but see* Defendants' Affirmation in Support, Ex. C, at 76, in which plaintiff admits that the transcript accurately reflected his grades from the Sappo School.) Plaintiff's mother alleges that the transcript is also inaccurate in that "Defendants incorporated zeroes into his grades for quizzes he missed on days he was absent from school during grades nine through twelve, while he attended the Patchogue-Medford High School." (*Id.* ¶ 22;Defendants' Affirmation in Support, Ex. W, at 40-41, explaining that plaintiff received zeros for tests missed due to absence caused by suspension from school; *but see* Defendants' Affirmation in Support, Ex. Y, at 37 and 63, in which plaintiff confirmed he had no proof that the grades reflected in the transcript were not correct.) Plaintiff's mother does not dispute the accuracy of plaintiff's ninth grade grades. (Defendants' Affirmation in Support, Ex. X, at 35.) Nor does plaintiff's mother dispute the tenth grade Regents exam scores, which included a 65 in U.S. history, a 56 in math and a 56 in living environment. (*Id.* at 42.) Plaintiff's mother contends, however, that plaintiff would have received straight A's that year if the school had not improperly incorporated zeros into his grades for the tests he missed due to absence. (*Id.* at 81.)

2. The SAT Examination

Plaintiff took the SAT Examination without accommodations in May of 2003 and scored a 710. (Defs' 56.1 ¶¶ 24-25.) Plaintiff alleges that he took the test at that time as practice and intended to take it again. Plaintiff alleges that defendants removed his name from the list of those eligible for accommodations to take the SAT Examination and/or prevented him from sitting for the examination when he attempted to take the test again in November of 2004. (*Id.* ¶ 24.) Plaintiff concedes he never attempted to take it after that, despite there being no barrier to his doing so.

3

On February 24, 2004, the College Board – the body responsible for providing test accommodations for the SAT Examination – approved plaintiff's request for testing accommodations and advised plaintiff that such accommodations would expire on August 31, 2004. (*Id.* ¶¶ 27-29.) Plaintiff applied and was scheduled to take the SAT Examination on November 6, 2004, after the testing accommodations were set to expire. (*Id.* ¶ 29.) On or about November 1, 2004, the College Board advised the Director of the Sappo School that plaintiff was not approved for accommodations for the November 2004 examination. (*Id.* ¶ 30.) On November 4, 2004, the defendant District's Assistant Superintendent for Pupil Personnel wrote to the College Board, requesting that plaintiff be allowed testing accommodations for the November 2004 examination. (*Id.* ¶ 31.) The College Board agreed to provide such accommodations, but plaintiff did not take the examination at the scheduled time. (*Id.* ¶ 32.) Plaintiff alleges that the District called the College Board and told them to cancel plaintiff's examination. (Defendants' Affirmation in Support, Ex. Y, at 76; Ex. X, at 45.)

3. College Admission

Plaintiff alleges that defendants prevented him from attending college by refusing to provide colleges with his medical immunization records. The District, however, is "not authorized to release medical records of its students." (Defs' 56.1 ¶ 34.) Plaintiff also alleges that inaccuracies in his transcript and denial of accommodations for and/or entrance to the SAT Examination have caused his rejection from the colleges of his choice. Defendants contend that plaintiff was accepted to Palm Beach Community College, but refused to attend because they required him to take remedial classes, (*Id.* ¶ 36; Defendants' Affirmation in Support, Ex. G, at 50, 52 (plaintiff testifying that Palm Beach Community College "send[s] [plaintiff] mail all the time . . . offering [him] to go to school . . . [and he] can't wait to go")) but plaintiff denies that contention. (*See* Defendants' Affirmation in Support, Ex. Y, at 13.) Plaintiff was accepted to Dowling College, which he attended for two months in the Spring of 2007. (Defs' 56.1 ¶ 37.) Plaintiff withdrew, however, before completing the first semester. (*Id.* ¶ 37; *see* Defendants' Affirmation in Support, Ex. Y, at 18.)

B. Procedural History

Plaintiff filed the complaint in this action on October 2, 2006. Defendants filed their answer on December 1, 2006. Defendants filed this motion for summary judgment on August 25, 2008. Plaintiff filed his response in opposition to defendants' motion for summary judgment on February 16, 2009.[2]

---

[2] The plaintiff's opposition to the motion for summary judgment was due by September 25, 2008. However, no opposition was filed by that date or for over 30 days following that date. Instead, by motion filed October 31, 2008, counsel for plaintiff sought to withdraw because of various difficulties with plaintiff and plaintiff's mother. In a written letter to the Court, dated November 13, 2008, plaintiff (and plaintiff's mother) opposed that motion and, despite the differences between counsel and plaintiff regarding various matters, plaintiff (and plaintiff's mother) wished current counsel to continue as plaintiff's attorney. During the course of this motion to withdraw, plaintiff's counsel represented to the Court that he could not ethically and in good faith oppose the summary judgment motion generally given the

4

Defendants filed their reply on February 27, 2009. The Court has considered all of the parties' submissions.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

---

record in this case, but believed there was a narrow ground he could assert in opposition on his client's behalf in good faith and consistent with his ethical obligations. As seen from the opposition papers, that narrow argument relates to the purported lack of certain discovery. Before counsel for plaintiff filed his opposition papers, the Court held an on-the-record conference with plaintiff (and plaintiff's mother) to ensure that he understood that his counsel was only going to defend the motion on that narrow procedural ground and that he wanted to continue nevertheless with current counsel. Plaintiff indicated that he understood and wanted to proceed with that counsel, rather than proceed with new counsel or proceed *pro se*.

III. DISCUSSION

A. Federal Claims

Defendants argue that plaintiff has not (and cannot) establish a *prima facie* case against defendants under any cause of action asserted in the complaint. Counsel for plaintiff does not appear to challenge this contention, but rather argues that any absence of evidence is due to the Magistrate Judge's refusal to allow plaintiff to extend or reopen discovery to conduct additional depositions. For the reasons set forth below, this Court finds that plaintiff has not put forth sufficient evidence upon which a reasonable juror could find in his favor on any of his federal claims. Further, the Court finds that plaintiff's request for review of the Magistrate Judge's discovery ruling is untimely and would be unsuccessful in any event. Similarly, to the extent that plaintiff is attempting to make a Rule 56(f) motion because of the failure to obtain certain discovery, the Court finds plaintiff's arguments completely unpersuasive.

1. Equal Protection

Plaintiff asserts violations of his rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *Latrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). An individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim provided he shows that (1) "[he] has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2000). Such a claim "requires a showing that the level of similarity between the plaintiff and the person(s) with whom she compares herself is extremely high - so high (1) that no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy, and (2) that the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake. The plaintiff must also show that the defendant intentionally treated her differently, with no rational basis." *Prestopnik v. Whelan*, No. 06-3186-cv, 2007 U.S. App. LEXIS 19612, at *4-*5 (2d Cir. Aug. 16, 2007) (internal citations and quotations omitted); *see also Price v. City of New York*, No. 06-3481-cv, 264 Fed. Appx. 66, 68, 2008 U.S. App. LEXIS 3133 (2d Cir. Feb. 13, 2008); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) ("the level of similarity between [such] plaintiffs and the persons with whom they compare themselves must be extremely high.").[3]

---

[3] The Second Circuit has not yet decided whether such a claim also requires "the plaintiff to demonstrate the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or

Plaintiff has put forth no evidence that others, similarly situated, were treated differently from plaintiff. Plaintiff simply states that he "has the right to accurate academic transcripts just as those other disabled students who are similarly situated in a public school setting." (Defendants' Affirmation in Support, Ex. FF, at 7.) He does not identify a single such "similarly situated" person, nor does he provide any other evidentiary support to his conclusory statement. No reasonable juror could find that plaintiff's burden was met based on such a showing. Such an omission is fatal to plaintiff's equal protection claim and, therefore, it cannot survive summary judgment. *See Prestopnik* U.S. App. LEXIS 19612, at *4; *see also King v. New York State Div. of Parole*, No. 05-1860-pr, 260 Fed. Appx. 375, 380, U.S. App. LEXIS 875 (2d Cir. Jan. 16, 2008) (dismissing claim for failure "to identify a single individual with whom he can be compared for Equal Protection purposes").

2. Section 1983 Claim

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Plaintiff alleges that defendants' actions have deprived plaintiff "of his rights, equal protection, privileges and immunities secured by the Constitution including the 14th Amendment in violation of 42 U.S.C. § 1983." (Compl. ¶ 45.) In response to an interrogatory from defendants asking plaintiff to "[d]escribe with specificity the manner in which Defendants have deprived Plaintiff of federally- and state-protected Constitutional rights," plaintiff stated that "[t]he Plaintiff has the right to accurate academic transcripts just as those other disabled students who are similarly situated in a public school setting." (Defendants' Affirmation in Support, Ex. FF, at 7.) Defendants now move for summary judgment on plaintiff's claim pursuant to Section 1983 on grounds that (1) plaintiff has offered no evidence to support a finding that he has been deprived of any right secured by federal statute or the United States Constitution, and (2) plaintiff has provided no support for a finding that the alleged constitutional violations occurred as a result of a government policy or custom as required by *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). (Defendants' Memorandum of Law, at 10-13.)

First, this Court agrees with defendants that plaintiff has not put forth any evidence to support a finding of a violation of his federally-protected rights by defendants. It appears that plaintiff means to assert that the alleged violation of his equal protection rights provides support for his Section 1983 claim. For the reasons stated *supra*, however, plaintiff has not sufficiently made out an equal protection claim and, for that reason, plaintiff's Section 1983 claim on the same grounds must also fail. To the extent that plaintiff alleges violation of his due process rights under the Fourteenth Amendment, such a claim also fails as a

---

bad faith intent to injure a person." *See Price v. City of New York*, 264 Fed. Appx. 66, 68 (2d Cir. 2008). This Court need not address this question as plaintiff's claim is deficient for other reasons.

matter of law.

To make out a substantive due process claim, plaintiff must demonstrate a violation of a liberty or property interest protected by the Due Process Clause. It is well-settled, however, that education is "'not among the rights afforded explicit protection under our Federal Constitution,' [and t]hus, 'the Fourteenth Amendment does not protect a public education as a substantive fundamental right.'" *Smith v. Guilford Bd. of Educ.*, No. 06-1094-cv, 2007 U.S. App. LEXIS 14132, at *5 (2d Cir. June 14, 2007) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) and *Handberry v. Thompson*, 436 F.3d 52, 70 (2d Cir. 2006)). Therefore, no substantive due process claim exists on the facts alleged.

To determine whether a procedural due process claim can survive summary judgment, the Court must first determine whether plaintiff has plausibly alleged a "legitimate claim of entitlement to the benefit [at issue], rather than a mere unilateral expectation of it." *Smith*, 2007 U.S. App. LEXIS 14132, at *7 (citations and quotations omitted). If plaintiff was not deprived of a liberty or property interest, then no due process is owed. *Board of Regents v. Roth*, 408 U.S. 564 (1972). Plaintiff's claim here would be that defendants' actions deprived him of his property interest in higher education. New York's Constitution and education laws do provide a right to elementary and secondary education for children up to the age of eighteen. N.Y. Const. Art. 8 § 1 and N.Y. Educ. L. § 3202 (1). They do not, however, provide a right to higher education, such as college. Therefore, plaintiff has no right to higher education pursuant to state law. Nor does plaintiff provide any other basis upon which it can be found that plaintiff had a legitimate claim to a college education. While New York law does provide that there may be a basis for a student to assert such a property interest where the student is already enrolled in a college and is then discontinued, *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("in stating that [plaintiff] had no property interest in continuing his education, the court did not mention New York law's recognition of an 'implied contract' between [a college or university] and its students, requiring the academic institution [to] act in good faith in its dealing with its students. Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection.") (internal citations and quotations omitted), there is no case law to support a finding that a plaintiff has a property interest in a college education program to which the plaintiff has not been accepted. *See, e.g., Brands v. Sheldon Community School*, 671 F. Supp. 627, 631 (N.D. Iowa 1987) ("Once awarded, a college scholarship may give rise to a property interest in its continuation. But there is not automatic entitlement to a college education. When scholarships are awarded at the discretion of a college coach, and such discretion has not yet been exercised, no property interest in the receipt of a scholarship can exist, and the plaintiff cannot invoke his expectation that he would earn a scholarship at the state tournament in order to claim a property interest in wrestling there.") (internal citations and quotations omitted).

To the extent that plaintiff is asserting a right to an accurate transcript, plaintiff has pointed to no case law finding such a right. Further, even if the Court found such a right to exist, there is no indication that plaintiff was deprived of due process regarding the

transcript. The lowered grades were a result of suspensions due to behavioral problems that plaintiff does not deny, such as using profanities with teachers. Plaintiff does not allege that any further process was owed and/or denied.

Second, even assuming *arguendo* that plaintiff were able to support his equal protection claim or due process claims, plaintiff's claim under Section 1983 must still be dismissed for failure to allege a practice or policy of the School District and/or School Board as an underlying cause of the alleged violation.

Under *Monell*, a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. It is well established that "[a] plaintiff stating a . . . claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the [violation] was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 129 S. Ct. 788, 797 (2009) (citing *Monell*, 436 U.S. at 694); *see also Monell*, 426 U.S. at 692-96 (finding the same for a school board); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001) ("Under § 1983, [plaintiff] may sue a local governing body, such as the school district, or the school board as policymaker for the district, for monetary, declaratory, or injunctive relief if the challenged action implements or executes a policy officially adopted by that body's officers. Neither the school board nor the school district can be liable for the actions . . . under a respondeat superior theory."). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Kern*, 93 F.3d at 44). "A municipality's failure to train or supervise its officers can rise to the level of an actionable policy or custom where it amounts to 'deliberate indifference' to the constitutional rights of its citizens." *Hall v. Marshall*, 479 F. Supp. 2d 304, 315-16 (E.D.N.Y. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) and *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 . . . where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference.")). "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under Monell." *Booker v. Bd. of Educ.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (citing *Monell*, 436 U.S. at 696-97); *see also Irene P. v. Phila. Acad. Charter Sch.*, No. 02-1716, 2003 U.S. Dist. LEXIS 3020, at *30-*32 (E.D. Pa. Jan. 29, 2003) (treating charter school as municipal entity for *Monell* purposes). Plaintiff does not allege, or have any evidence of, a custom or policy of the School District or School Board responsible for the alleged violations of plaintiff's rights.

As to the allegations that plaintiff's transcript included inaccurate grades from the Sappo School, plaintiff has put forth no evidence to counter defendants' evidence that

the grades on his transcript accurately reflect the grades sent to defendants by the Sappo School. (*See* Defendants' Affirmation in Support, Ex. GG.) Therefore, there is no evidence to support a finding that any alleged error was made by defendants. Rather, any error would have been the fault of the private Sappo School, which is not a party to this action. To the extent that plaintiff alleges that defendants were somehow responsible for this error, plaintiff has put forward no evidence to support such a claim, nor has plaintiff identified any custom or policy of defendants responsible for such an error.

As for the grades from Patchogue-Medford, plaintiff has not alleged that it was a School District or School Board custom or policy to lower grades for tests missed due to absence. In fact, plaintiff alleges that some teachers did not do this.

Next, plaintiff's claims about the SAT Examination do not assert that the alleged violation was a result of a School District or School Board custom or policy either. The College Board – not defendants – is responsible for administering the SAT Examination and for providing accommodations to students during the examination. Plaintiff has offered no evidence to counter the evidence put forward by defendants indicating that defendants in no way barred plaintiff from taking the SAT Examination or limited plaintiff's testing accommodations in any way. (*See* Defendants' Affirmation in Support, Ex. Z, Ex. AA, Ex. Y, Ex. CC and Ex. GG.) Further, plaintiff has not identified any municipal custom or policy under which any such action was conducted.

In sum, plaintiff has failed to sufficiently allege, or provide evidence of, a violation of his federally-protected rights to support his claim under Section 1983. Further, even if plaintiff had sufficiently alleged a violation of his federally-protected rights, he has not identified a School District or School Board custom or policy responsible for the alleged violations, and, therefore, neither the School District nor the School Board can be held liable.[4]

---

[4] As for the claims against Mostow, in his official capacity, "[t]he Supreme Court has explained that in an official-capacity suit, however, the real party in interest is not the named official but rather the governmental entity itself. *Monell*, 436 U.S. at 691. As such, in an official-capacity suit we require 'the entity's 'policy or custom' [to have] played a part in the violation of federal law.' *Kentucky v. Graham*, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (quoting *Monell*, 436 U.S. at 694)." *Douglas v. Beaver County Sch. Dist. Bd.*, No. 03-4004, 82 Fed. Appx. 200, 203, 2003 U.S. App. LEXIS 24537, at *3 (10th Cir. Dec. 5, 2003). Therefore, as no policy or custom has been alleged, as discussed *supra*, the claim against Mostow in his official capacity cannot stand.

Moreover, this Court finds that the Section 1983 claim against Mostow in his individual capacity also fails to survive summary judgment because, as is the case with the District and School Board, there is no evidence of a violation of a federally-protected right that could form the basis for a Section 1983 violation. In any event, even if plaintiff had sufficiently alleged or provided evidence of a violation of a federally-protected right, there is no allegation (or evidence) of any personal involvement by Mostow in the District's decisions being challenged to support individual liability. *See, e.g., Loret v. Selsky*, No. 07-CV-6392L, 2009 WL 204814, at *4 (W.D.N.Y. Jan. 27, 2009) (granting summary judgment on Section 1983 claim against superintendent of correctional facility in his individual capacity because of lack

### 3. The IDEA and the ADA Claims

The purpose of IDEA is to provide children with disabilities with access to a "free appropriate public education." 20 U.S.C. §§ 1400(c), (d). In passing IDEA, "Congress sought primarily to identify and evaluate handicapped children, and to provide them with access to a free public education." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 200 (1982). The primary mechanism of the statute is the design and implementation of an Individualized Education Plan ("IEP") to address each student's particular disabilities. 20 U.S.C. § 1414. The IEP sets forth (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the child's progress toward meeting the annual goals will be measured; (4) a statement of the educational services to be provided; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; (6) a statement of any individual accommodations necessary to measure the child's performance on standardized assessments (or an explanation of why the child cannot participate in the assessments); (7) the projected date for the implementation of services, as well as the anticipated frequency, location, and duration of the services; and (8) a plan for achieving post-secondary school goals and provisions for transitional services. 20 U.S.C. § 1414(d)(1)(A).

It is well-settled that, prior to bringing a suit in federal court under IDEA, plaintiffs must exhaust all available administrative procedures. 20 U.S.C. § 1415(*l*) (2006). In the State of New York, these include an impartial hearing and an appeal of the hearing officer's decision to a state review officer. 20 U.S.C. §§ 1415(f), (g); 8 N.Y.C.R.R. § 200.5. Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). "Failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)).

Furthermore, the IDEA statute requires plaintiffs with *any* claims related to the education of disabled children, whether brought under IDEA or another statute (*i.e.*, the ADA), to exhaust the administrative remedies available under IDEA prior to initiating a federal lawsuit. 20 U.S.C. § 1415(*l*) (2006) ("Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.") (citations omitted); *Polera*, 288 F.3d at 481 ("[P]otential plaintiffs with grievances related to the education of disabled children

---

of any evidence of personal involvement in the relevant events).

11

generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)."); *Hope v. Cortines*, 872 F. Supp. 14, 17 (E.D.N.Y), *aff'd*, 69 F.3d 687 (2d Cir. 1995) (holding that ADA, Section 1983 and Section 2000d claims are subject to IDEA's exhaustion requirement).

Plaintiff does not allege that he has exhausted his claims or that such claims should be exempt from the exhaustion requirements. In any event, no evidence has been presented indicating that there is factual support for either of those claims. Accordingly, the IDEA and the ADA claims cannot survive summary judgment.

### B. Plaintiff's Discovery Arguments

In his opposition to defendants' motion for summary judgment, plaintiff's counsel does not contest that plaintiff lacks sufficient evidence to support his claims on the merits. Instead, plaintiff's counsel argues that "(1) summary judgment should not be granted where there [sic] the moving party is in sole possession of facts which are in dispute, and (2) that summary judgment should not be granted where the opposing party has been denied relevant discovery." (Plaintiff's Affirmation in Opposition ¶ 1.) Specifically, plaintiff's counsel alleges that he "did not have the opportunity to depose defendant Michael Mostow, superintendent of the Patchogue-Medford School district [or Joseph LoSchiavo, a school board member] about the facts surrounding a letter he wrote to Plaintiff's mother on July 12, 2006 which is at the heart of this case." (*Id.* ¶ 3.) Plaintiff's counsel argues that this letter supports plaintiff's argument that there were discrepancies in plaintiff's transcript. Plaintiff's counsel states that he would have deposed these two individuals, but his "motion to extend the discovery period in order to obtain these depositions was denied in an order dated March 28, 2008." (*Id.* ¶ 7.) The referenced letter states, in relevant part, the following:

> I have reviewed your son Christopher's transcript and folder. I have found three (3) instances where there appears to be a discrepancy in the grades sent to us by the Sappo School and those listed on the Patchogue-Medford School transcript. There is also a letter dated May 8, 2005, in your son's file from Ms. Joanne Sappo. This letter, which I am sure you have read, indicates that there were two (2) changes in the grades. It goes on to say that Christopher was given a deadline date to complete assignments in English and Astronomy. The letter states, "when the work was completed it was applied to his grades." However, I cannot determine from this letter whether his grades were increased or decreased and I am going to attempt to contact Ms. Sappo to determine what, in fact, happened. In addition, I have a copy of your son's high school diploma dated August 21, 2004. This graduation date is during the 2004-2005 school year. Your son's

12

transcript indicates that he graduated in June 2005.

(*Id.*, Ex. 1.)

To the extent that plaintiff is seeking review of Magistrate Judge Lindsay's refusal to re-open discovery, the Court finds that contention to be without merit. As a threshold matter, plaintiff never appealed Judge Lindsay's order denying plaintiff's request to reopen or extend discovery to allow for these additional depositions. The District Court need not reconsider a motion that has been ruled upon by a Magistrate Judge, but not appealed. *See, e.g., Maslanka v. Johnson & Johnson, Inc.*, No. 08-2329, 2008 U.S. App. LEXIS 26269, at *14 (3d Cir. Dec. 23, 2008) (affirming a district court's grant of summary judgment where the non-moving party "did not seek timely District Court review of the Magistrate Judge's decisions to deny the motion to compel or to reopen discovery. Instead, in his sur-reply to the defendants' summary judgment motion, . . . [the party] renewed his request to reopen discovery, long after discovery had closed and well into the summary judgment proceedings."); *see also* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 10 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.")

In any event, even assuming *arguendo* there was a timely appeal of Judge Lindsay's ruling on the motion to reopen discovery, this Court find that there is no basis for reversing such decision. Under Rule 72(a) of the Federal Rules of Civil Procedure, "[t]he district judge in the case must consider timely objections [to non-dispositive pretrial matters determined by a Magistrate Judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *see also Federal Ins. Co. v. Kingsbury Properties, Ltd.*, Nos. 90 Civ. 6211 (JMC), 90 Civ. 6357 (JMC), 1992 WL 380980, at *2 (S.D.N.Y. Dec. 7, 1992). "In deciding discovery disputes, a magistrate judge is entitled to broad discretion, which will be overruled only if abused. Magistrate judges receive substantial deference, particularly where they have been deeply involved in discovery matters in the case for years." *Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 U.S. Dist. LEXIS 11504, at *25 (S.D.N.Y. Jan. 30, 2009) (internal quotations and citations omitted).

"Under Rule 72(a), '[a] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Burgie v. Euro Brokers, Inc.*, No. 05 Civ. 0968 (CPS) (KAM), 2008 U.S. Dist. LEXIS 71386, *18 (E.D.N.Y. Sept. 5, 2008) (quoting *Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for South. Cal.*, 508 U.S. 602, 622 (1993)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.*

After a careful review of the record, there is no indication that Magistrate Judge Lindsay's ruling was based on clearly erroneous findings of fact or was contrary to

law. Fed. R. Civ. P. 26(b)(2)(C)(ii) requires that a "court must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *Id.* Plaintiff had over a year to conduct discovery, including multiple extensions of the discovery period. Plaintiff's counsel concedes in his opposition that he always intended to depose Mostow and LoSchiavo, but that he simply "did not depose either Mostow or LoSchiavo by the time the discovery period terminated in this case." He does not provide any explanation for this failure. Nor did he offer any such explanation to Magistrate Judge Lindsay. On these facts, this Court cannot conclude that Magistrate Judge Lindsay's order was clearly erroneous or contrary to law.

Finally, to the extent that plaintiff's opposition to the summary judgment motion also could be construed as an application under Rule 56(f) of the Federal Rules of Civil Procedure, that application is without merit for several reasons. First, plaintiff has failed to comply with the requirements set forth in Rule 56(f) of the Federal Rules of Civil Procedure. The Second Circuit has held that "Rule 56(f) requires the opponent of a motion for summary judgment who seeks discovery to file an affidavit explaining: (1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful." *Sage Realty Corp. v. Ins. Co. of N. Am.*, 34 F.3d 124, 128 (2d Cir. 1994). Where these requirements are not met, a request pursuant to Rule 56(f) may be denied. *Id.* Plaintiff has filed no such affidavit here and denial, therefore, is appropriate. Second, relief under Rule 56(f) "is not available when summary judgment motions are made after the close of discovery, as in the instant case." *Espada v. Schneider*, 522 F. Supp. 2d 544, 549 (S.D.N.Y. 2007). Third, even if such relief were timely sought, such application would still be denied because plaintiff clearly had ample opportunity to pursue the discovery it now contends was necessary to gather sufficient evidence to survive summary judgment. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927-28 (2d Cir. 1985) (denying 56(f) motion where party had "ample time to pursue the discovery that it now claims is essential" and holding that "[a] party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need"). As discussed above, there is no question that plaintiff had sufficient time for discovery, took insufficient steps to seek more time, and has failed to show a need for further discovery. *See, e.g., Vargas v. Midtown Air Condition and Ventilation, Ltd.*, No. 07 Civ. 3343 (RMB), 2008 WL 5062611, at *8 (S.D.N.Y. Nov. 24, 2008); *Espada v. Schneider*, 522 F. Supp. 2d at 550.

In sum, plaintiff has not pointed to sufficient evidence for a reasonable jury to find in its favor on any of the federal claims. Moreover, although plaintiff attempts to explain such failure, plaintiff offers no explanation for his failure to obtain this information before the close of discovery or his failure to seek review of any discovery orders issued by the Magistrate Judge. Moreover, the contention that the additional discovery would have produced evidence to overcome the summary judgment motion is

completely speculative and easily refuted by the other fundamental defects in the federal claims identified in this Memorandum and Order. Thus, any purported application under Rule 56(f) is entirely without merit. Accordingly, summary judgment on all federal claims is warranted.

### C. State Law Claims

Having determined that none of plaintiff's federal claims survive summary judgment, the Court concludes that retaining jurisdiction over the state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 U.S. Dist. LEXIS 41834, 2007 WL 1703914, at *15 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 U.S. Dist. LEXIS 12842, 2002 WL 1561126, at *4 (S.D.N.Y. July 12, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 42 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive dismissal, and dismisses such state claims without prejudice.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted granted on all federal claims. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses such claims without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 20, 2009
Central Islip, New York

* * *

The attorney for plaintiff is David Gordon, Esq., 300 Rabro Drive, Suite 138, Hauppauge, New York 11788. The attorneys for defendants are Rondiene Erin Novitz, Esq., Gary Edward Dvoskin, Esq. and Keith V. Tola, Esq., of Cruser Mitchell & Novitz, LLP, 175 Pinelawn Road, Suite 301, Melville, New York 11747.